**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GLEN C. WATSON, III, TRUSTEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 3:14-CV-00580** |
| | ) | **Judge Aleta A. Trauger** |
| **DIANA L. DAY CARTEE, ALAN** | ) | |
| **CARTEE, UNITED STATES OF** | ) | |
| **AMERICA, acting through the Department** | ) | |
| **of the Treasury, REGIONS BANK, SHARP** | ) | |
| **MECHANICAL, INC., ANDRES** | ) | |
| **VALENZUELA, JR., individually and d/b/a** | ) | |
| **Andy's Pool Service, MUSIC SQUARE** | ) | |
| **PARTNERSHIP, and DEMONBREUN** | ) | |
| **ROOFING, INC.,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DIANA L. DAY CARTEE and** | ) | |
| **ALAN CARTEE,** | ) | |
| | ) | |
| **Third-Party Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **HENRY PRESTON INGRAM,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

**<u>MEMORANDUM</u>**

Pending before the court are three motions. Defendant Regions Bank ("Regions") has

filed a Motion for Summary Judgment (Docket No. 35) on the interpleader Complaint, to which

(1) defendant Demonbreun Roofing, Inc. ("DRI") has filed a Response in support (Docket No.

45), and (2) defendants Diana L. Day Cartee ("Diana Cartee") and Alan Cartee ("Alan Cartee")

1

(together, "Cartees") have filed a Response in opposition (Docket No. 49). The Cartees have filed a Motion for Summary Judgment (Docket No. 68) on their Third Party Complaint for Declaratory Judgment ("Third Party Complaint") against Henry Preston Ingram ("Ingram"), to which Ingram has filed a Response in opposition (Docket No. 71). Ingram has also filed a Motion for Summary Judgment (Docket No. 59) on the Third Party Complaint, to which the Cartees have filed a Response in opposition (Docket No. 65). For the following reasons, the court will grant Regions' Motion for Summary Judgment, grant Ingram's Motion for Summary Judgment, and deny the Cartees' Motion for Summary Judgment.

## BACKGROUND

The Cartees are the former owners of the real property located at 514 Park Center Drive, Nashville, Tennessee ("Property"). Regions and Citizens Bank and Savings Company ("Citizens") are banking corporations in the business of, *inter alia*, extending credit and issuing loans that are secured by real property. Citizens, Regions, and the other defendants are creditors of the Cartees. Glen C. Watson, III ("Watson") is the Substitute Trustee who was employed by Citizens to conduct a foreclosure sale of the Property. Ingram is a resident of Williamson County, Tennessee.

The relevant material facts are undisputed.[1] On February 7, 2002, the Cartees executed and delivered a Deed of Trust ("Citizens Deed of Trust") to secure to Citizens the payment of a

---

[1] The Statements of Undisputed Fact and Responses thereto filed in connection with this case reflect agreement among the parties as to the pertinent facts. Any disagreement therein concerns statements that the parties may believe are irrelevant, based upon hearsay, or are conclusions of law. The court has reviewed all of the factual submissions, and finds no dispute of material fact that would preclude judgment as a matter of law on any of the pending motions. (*See* Docket Nos. 39, 59, 66, 67, 69.)

promissory note in the original principal amount of $1,009,129.85 executed by Diana Cartee, and, thereafter, a consolidated promissory note in the amount of $1,357,504.94 executed by Diana Cartee. The Citizens Deed of Trust describes the Property. Despite being executed in Tennessee, the notary's certificate of acknowledgment incorrectly stated that the Citizens Deed of Trust was executed in Alabama. The Citizens Deed of Trust was recorded by Instrument No. 20110207-0010468 in the Register of Deed's Office for Davidson County, Tennessee, on February 12, 2002.

On April 1, 2002, the Citizens Deed of Trust was re-recorded as Instrument No. 20020401-0038983, Register's Office for Davidson County, Tennessee. In the re-recorded Citizens Deed of Trust, (1) the notary's acknowledgment was revised to change "Alabama" to "Tennessee," (2) "Davidson" was inserted in a blank space for the county, and (3) the statement "[t]his document is being rerecorded [sic] to add the derivation clause and to correct the notary acknowledgment[]" was added in all capital letters at the top of the first page. Diana Cartee was not notified of the re-recording.[2]

Diana Cartee defaulted on her obligations to Citizens under the Citizens Deed of Trust and the promissory notes secured thereby. Citizens called upon Watson to invoke the default and foreclosure sale provisions under the Citizens Deed of Trust. Thereafter, the Cartees and Citizens

---

[2] The Cartees do not challenge the fact that the Citizens Deed of Trust is effective between Citizens and the Cartees as it relates to the debt. In fact, in Diana Cartee's Chapter 11 bankruptcy case, the Bankruptcy Court for the Middle District of Tennessee entered an Agreed Order on May 7, 2013, in which Diana Cartee acknowledged to Citizens the "valid and unavoidable Deed of Trust executed by [Diana Cartee] dated February 7, 2002 . . . and the valid and unavoidable Deed of Trust executed by [Diana Cartee] dated April 3, 2002." (Docket No. 44, Ex. 1.) Instead, as discussed *infra*, the Cartees challenge whether the Citizens Deed of Trust was properly recorded, and, thus, whether Citizens has priority over other creditors.

executed a Forbearance Agreement on February 15, 2011, wherein Citizens agreed to forbear from exercising its remedies under the Citizens Deed of Trust, conditioned upon certain performance by Diana Cartee. Diana Cartee defaulted under the Forbearance Agreement. Thereafter, the Cartees and Citizens entered into a First Amendment modifying certain provisions of the Forbearance Agreement. Diana Cartee defaulted under the First Amendment. On September 5, 2012, the Cartees and Citizens entered into a Second Forbearance Agreement, wherein Citizens agreed to forbear from exercising its remedies under the Citizens Deed of Trust, conditioned upon certain performance by the Cartees. The Cartees defaulted under the Second Forbearance Agreement.

By Instrument No. 20110207-0010468 in the Register's Office for Davidson County, Tennessee, Watson was appointed Successor Trustee under the Citizens Deed of Trust. In carrying out his duties as Successor Trustee, Watson discovered encumbrances and liens of record junior to the Citizens Deed of Trust as follows: (1) a Credit Agreement with Regions (secured by the Property) dated January 28, 2004, in the amount of $400,000.00, of record as Instrument No. 20040213-0017287, Register's Office for Davidson County, Tennessee; (2) a federal tax lien recorded by the Department of the Treasury against the Cartees on August 9, 2011, of record as Instrument No. 20110819-0064235, Register's Office for Davidson County, Tennessee; (3) a federal tax lien recorded by the Department of the Treasury against Diana Cartee on April 23, 2012, of record as Instrument No. 20120423-0034321, Register's Office for Davidson County, Tennessee; (4) a federal tax lien recorded by the Department of the Treasury against Alan Cartee on April 23, 2012, of record as Instrument No. 20120423-0034322, Register's Office for Davidson County, Tennessee; (5) a federal tax lien recorded by the

Department of the Treasury against the Diana L. Day Cartee Charitable Remainder Trust on October 26, 2012, of record as Instrument No. 20121026-0098141, Register's Office for Davidson County, Tennessee; (6) a judgment lien in favor of Sharp Mechanical, Inc. ("SMI"), filed December 16, 2011, in the amount of $3,256.17, of record as Instrument No. 20111216-0098324, Register's Office for Davidson County, Tennessee; (7) a judgment lien in favor of Andres Valenzuela, Jr. d/b/a/ Andy's Pool Service ("APS"), filed August 16, 2012, in the amount of $3,155.50, of record as Instrument No. 20120816-0073644, Register's Office for Davidson County, Tennessee; (8) a judgment lien in favor of Music Square Partnership ("MSP"), filed March 8, 2013, in the amount of $117,260.19, of record as Instrument No. 20130308-0023385, Register's Office for Davidson County, Tennessee; and (9) a mechanic's and materialman's lien in favor of DRI, filed July 8, 2013, for $26,825.00, of record as Instrument No. 20130708-0070451, Register's Office for Davidson County, Tennessee.

On June 17, 2013, Watson caused to be issued a Notice of Successor Trustee's Sale ("Notice") that scheduled a foreclosure sale of the Property to occur at 1:00 p.m. on July 19, 2013. Watson simultaneously sent a copy of the Notice to all defendants by regular first class mail and by certified mail. Hours before the scheduled foreclosure sale, the Cartees filed an action ("Action") in the Chancery Court of Davidson County, Tennessee, alleging that the Notice was deficient.[3] Watson's delegate disclosed to the interested bidders who appeared at the scheduled foreclosure sale that the Action had been filed and announced the continuance of the foreclosure sale until August 2, 2013. Thereafter, Watson – with consent of counsel for the Cartees – continued the foreclosure sale five additional times in deference to the Action. On

---

[3] Watson received notice of the Action from the Cartees, but they did not serve the Complaint upon him.

November 18, 2013, the Davidson County Chancery Court issued an order of dismissal with prejudice of the Action, based upon a voluntary non-suit by the Cartees. On December 20, 2013, the Property was offered for sale by Watson pursuant to the terms of the Citizens Deed of Trust. The Property was sold to Ingram for the highest bid of $1,513,000. The Cartees' attorney was among the unsuccessful bidders. Watson received the full purchase proceeds and provided Ingram with a Successor Trustee's Deed.

Upon receipt of the foreclosure sale proceeds, Watson paid Citizens in accordance with the provisions of the Deed of Trust. After payment to Citizens, there remained a surplus amount of $281,632.74 ("Surplus Proceeds"). As of May 27, 2014, the balance due to Regions under the defaulted Credit Agreement was $420,350.63.

On December 23, 2013, Ingram filed an eviction lawsuit against the Cartees in the Davidson County General Sessions Court. After a trial, the General Sessions Court awarded Ingram an eviction judgment on February 19, 2014, overruling the Cartees' attacks on the Citizens Deed of Trust and granting Ingram a judgment for possession of the Property.[4] The Cartees appealed the General Sessions Court ruling to the Circuit Court for Davidson County, Tennessee, invoking their right to a trial *de novo*.

On January 23, 2014, Watson filed a Complaint for Interpleader in the Chancery Court of Davidson County, Tennessee, against the Cartees and their creditors, seeking a determination as to the distribution of the Surplus Proceeds. (Docket No. 1, Ex. 2.) Defendant United States removed the action to this court. (Docket No. 1.) Watson thereafter paid the Surplus Proceeds into the registry of this court for a determination as to distribution, and the court discharged him

---

[4] Following the court ruling, on February 20, 2014, Ingram remitted property taxes for the Property that had not been paid in 2011, 2012, or 2013.

from further liability in this matter.[5]  (Docket Nos. 15, 28.)  On May 27, 2014, Regions filed its

pending Motion for Summary Judgment, seeking distribution to it of the entire amount of Surplus

Proceeds.  (Docket No. 35.)  On June 6, 2014, DRI filed a Response in which it stated that it did

not contest Regions' claim to the Surplus Proceeds.[6]  (Docket No. 45.) On June 11, 2014, the

Cartees filed a Response in opposition to Regions' Motion.[7]  (Docket No. 49.)

On May 29, 2014, the Cartees filed a Third Party Complaint against Ingram, seeking a

declaratory judgment that the Citizens Bank Deed of Trust had not been properly recorded, that

the foreclosure sale was improper, and that title is not properly vested in Ingram.  (Docket No.

41.)  However, the Cartees failed to serve the Third Party Complaint on Ingram.  In response to

an Order to Show Cause as to why the Third Party Complaint should not be dismissed, the

Cartees, represented by new counsel, sought an extension of time to serve the Third Party

Complaint pursuant to Federal Rule of Civil Procedure 4(m).  (Docket No. 57.)  On December

18, 2014, the court issued an Order granting the Cartees' request and allowing them to serve the

Third Party Complaint on Ingram *nunc pro tunc*.  (Docket No. 58.)  On December 22, 2014,

Ingram filed his pending Motion for Summary Judgment on the Third Party Complaint.  (Docket

No. 59.)  On January 16, 2014, the Cartees filed a Response in opposition.  (Docket No. 65.)  The

---

[5] The United States, Regions, and the Cartees filed Answers to the Complaint.  (*See* Docket Nos. 6, 9, 33.)   On May 21, 2014, an Entry of Default was issued against defendant MSP for failure to respond to the Complaint.  (Docket No. 34.)  It appears that SMI and APS have not participated in this litigation.

[6] DRI requested that, in the event Regions is not found to be in first priority for distribution, the Surplus Proceeds be paid to DRI rather than to the Cartees.  (*See* Docket No. 45.)

[7] Despite having initially participated in this litigation, the United States did not file a response to Regions' Motion for Summary Judgment.

Cartees filed their pending Motion for Summary Judgment on the Third Party Complaint on January 23, 2014. (Docket No. 68.) On January 30, 2014, Ingram filed a Response in opposition.[8] (Docket No. 71.)

On January 5, 2015, the Circuit Court of Davidson County stayed the Cartees' *de novo* trial pending a ruling from this court as to whether title to the Property is properly vested in Ingram.

## RULE 56 LEGAL STANDARD

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a

---

[8] Ingram's Response brief is, understandably, identical to Ingram's brief in support of his Motion for Summary Judgment.

scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## MOTIONS FOR SUMMARY JUDGMENT ANALYSIS

In its Motion for Summary Judgment, Regions contends that it (1) has a properly perfected second priority mortgage of record on the Property sold at foreclosure by Watson, (2) is currently owed $420,350.63, secured by the mortgage, (3) has the highest priority right, interest, and claim to the interpleaded funds, and (4) is, therefore, entitled to distribution of the entire $281,632.74 of interpleaded funds. (Docket Nos. 35, 36.) In response, the Cartees argue that that (1) the Trustee conducted an improper foreclosure sale because the Citizens Deed of Trust, while valid and enforceable between Citizens and the Cartees as to the debt, had not been properly registered to allow Watson to transfer title of the Property to Ingram, (2) Regions actually has title to the Property under its Deed of Trust (under which the Cartees have defaulted, but upon which the foreclosure sale was not premised), and (3) Regions is therefore not entitled to distribution of the funds interpleaded by Citizens. (Docket No. 45.) By means of the Third Party Complaint, the Cartees seek a declaratory judgment along the exact same lines as the defense they raise in opposition to Regions' Motion for Summary Judgment. (*See* Docket No. 41.) The outcome of this entire matter, therefore, depends solely on whether the Citizens Deed of Trust was properly recorded, such that Citizens and Watson properly conducted the foreclosure sale and transferred title to Ingram.

As a preliminary matter, Ingram notes that the Third Party Complaint may be improper

under Federal Rule of Civil Procedure 14.[9]  There is merit to this observation.  This is an interpleader action brought by Watson to determine the proper allocation of the Surplus Proceeds of the foreclosure sale of the Property.  The Third Party Complaint seeks a declaratory judgment as to the validity of the foreclosure sale by attacking the Citizens Deed of Trust and Watson's power to transfer title to the property premised thereupon.  The Cartees' claim for declaratory relief would better lie against Watson, as the Successor Trustee who acted on behalf of Citizens Bank in conducting the foreclosure sale and transferred title to the Property to Ingram, as opposed to against Ingram himself.  As such, the Cartees's claim for declaratory judgment could more appropriately have been brought as a counterclaim pursuant to Federal Rule of Civil Procedure 13.[10]  Furthermore, the Cartees' request for declaratory relief is not in the nature of a

---

[9] Under Federal Rule of Civil Procedure 14, "a defending party may, as third-party plaintiff, serve a summons and complaint on a non-party who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a)(1).  Impleading a third party in this manner "is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded."  *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805-06 (6th Cir. 2008).  The essential nature of a third-party complaint is, therefore, that a defendant is attempting to transfer liability asserted against him by the original plaintiff to a third-party defendant (*e.g.*, by means of an indemnity or contribution claim).  *Id.*  Underlying this rule is a desire "to promote economy by avoiding the situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him."  *Id.* (citing 6 Wright, Miller, Kane, Fed. Prac. & Proc.: Civ. 2d § 1441 at 289–90 (2d ed. 1990)).  Accordingly, "Rule 14(a) does not allow a third-party complaint to be based on an independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying [the] plaintiff's claim . . . ."  In short, "a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant."  *Id.* (citation omitted).

[10] Rule 13 provides, *inter alia*, that a party must bring as a compulsory counterclaim any claim that the pleader has against an opposing party, if the claim (1) "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and (2) does not require adding another party of whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a)(1)(A).

typical indemnification or contribution claim (as contemplated by Rule 14 and *American Zurich*), because it is not founded on Ingram's actual or potential liability to the Cartees. In other words, the Cartees, as third-party plaintiffs, do not seek to transfer some portion of a liability of their own to the plaintiff onto Ingram as the third-party defendant. Instead, the Third Party Complaint states a related claim arising out of the same underlying occurrence that is perhaps more properly suited to an independent action.

However, Ingram has requested that any ruling on Regions' Motion for Summary Judgment directing the payment of proceeds from the foreclosure sale also include a determination of the validity of that sale, so as to avoid duplicate or inconsistent results elsewhere. (*See* Docket No. 43 at pp. 1-2.) There is merit to this request as well. The Davidson County Circuit Court has stayed its trial *de novo* on appeal from the General Sessions Court in deference to a ruling from this court as to whether title properly passed to Ingram under the Citizens Deed of Trust. The Cartees argue the same substantive legal issue in opposition to Regions' Motions for Summary Judgment that is raised by the Third Party Complaint, and, therefore, the question of the validity of the Citizens Deed of Trust as recorded must be considered by the court in any event. This matter has dragged on too long for all parties involved, and the court is in a position to offer a degree of finality concerning the Citizens Deed of Trust and title to the Property. The court will, therefore, rule on the merits of all three pending motions.[11]

The legal issue before the court on the Motions for Summary Judgment is

---

[11] In addition, as discussed *infra*, the court's ruling on the merits of the Motions for Summary Judgment on the Third Party Complaint will have the same result as a dismissal on procedural grounds.

straightforward: did a defect on the notary's acknowledgment invalidate the foreclosed-upon Citizens Deed of Trust, even though it was recorded in the Davidson County Register of Deeds Office? If the answer is no, then there is no basis known to the court to attack the foreclosure sale conducted pursuant to the terms of the Citizens Deed of Trust, to argue that the proceeds of the foreclosure sale were illegitimately obtained and would be improperly distributed to Regions, or to contend that title improperly passed to Ingram as purchaser at the foreclosure sale. If the answer is yes, then there are grounds to challenge whether the foreclosure was proper, to question whether title is vested in Ingram (or in Regions under its own Deed of Trust), and to doubt whether Regions is entitled to distribution of the Surplus Proceeds from the foreclosure sale (and, by implication, whether Citizens was entitled to its own proceeds from the foreclosure sale).

The court finds that there is no basis for the Cartees to attack the Citizens Deed of Trust. Under current Tennessee law, a defect in an acknowledgment does not invalidate a deed of trust that has been accepted by a register of deeds for recording. Prior to 2005, some courts applying Tennessee law held that omission of identifying information from an acknowledgment rendered it ineffective and fatal to the recording of an instrument. *See, e.g., In re Biggs*, 377 F.3d 515, 519 (6th Cir. 2004). However, in 2005, the Tennessee legislature addressed the specific problem posed by recorded instruments with defective acknowledgments by amending Tenn. Code Ann. § 66-24-101. The 2005 amendment states that, if an instrument is not properly acknowledged, "[t]he county register *may* refuse to register it," but "[i]f, however, an instrument not so acknowledged or proved otherwise is validly registered, the instrument *shall* be deemed to be validly registered . . . and in full compliance with all statutory requirements . . . and all interested parties shall be on constructive notice of the contents of the instrument." Tenn. Code Ann. § 66-24-101(e) (emphasis added). This unambiguous statutory language conclusively establishes that,

if a Register of Deeds accepts an instrument for recording and it has a defective acknowledgment, the deed is validly recorded and all parties are on notice of its contents, even if the authenticity of the acknowledgment is subsequently challenged. The Cartees' arguments to the contrary, which rely upon decisions that all pre-date the 2005 amendment to § 66-24-101, are unpersuasive.

The Cartees attempt to circumvent the language of Tenn. Code Ann. § 66-24-101(e) by arguing that the 2005 amendment does not govern a deed of trust recorded (and re-recorded) in 2002. This argument fails, based upon the statute and caselaw. In 2007, this precise issue was at the heart of a case before the U.S. Bankruptcy Court for the Eastern District of Tennessee. *In re Hickman*, 367 B.R. 620, 621 (Bankr. E.D. Tenn. 2007). *Hickman* was an adversary proceeding filed by a Chapter 7 Trustee who sought to avoid a lien encumbering the real property of the debtors grounded upon a defective acknowledgment in the deed of trust. Specifically, the acknowledgment at issue (1) omitted the signing parties' names and (2) contained an incorrect date. *Id.* The deed of trust at issue was recorded in 2004 – prior to the 2005 amendment to § 66-24-101. *Id.* at 623.

The *Hickman* court explained that, while the Register of Deeds had the power to refuse to record the deed of trust with a defective acknowledgment, "[n]evertheless, if the register does allow the document to be recorded, an improper acknowledgment will no longer vitiate the validity of that recorded document, and the recorded document provides notice to creditors, judicial lienholders and bona fide purchasers of the document's contents."[12] *Id.* at 624.

---

[12] Under Tennessee law, "whatever is sufficient to put a person upon inquiry, is notice of all the facts to which that inquiry will lead, when prosecuted with reasonable diligence and in good faith." *Tex. Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (1950) (quoting *Covington v. Anderson*, 84 Tenn. 310, 319 (Tenn. 1886)). Legally registered documents place creditors and subsequent purchasers "on constructive notice." *In re Marsh*, 12 S.W.3d 449, 454 (Tenn. 2000).

Furthermore, the court also held that the 2005 amendment applies to all instruments that were recorded prior to June 6, 2005, based upon the fact that § 66-24-101(f) explicitly states that the statute applies to all instruments "*of record on* or after June 6, 2005." *Id.* at 624-25 (emphasis added).[13] The court concluded that, pursuant to the 2005 amendment, a deed of trust recorded in 2004 with a defective acknowledgment was "validly registered" and that the Trustee challenging it "may not avoid [the] lien." *Id.*

This court concurs with the *Hickman* court's reading of §§ 66-24-101(e) and (f),[14] and *Hickman* is squarely on point here. The Citizens Deed of Trust, with a defective acknowledgment, was first accepted by the Davidson County Register of Deeds for recording on February 7, 2002. A corrected version was accepted by the same Register of Deeds for recording on April 1, 2002. Under the 2005 amendment set forth in Tenn. Code Ann. § 66-24-101(e), the Citizens Deed of Trust is valid and enforceable as recorded, and it cannot be challenged based upon the acknowledgment defects. The Cartees are considered by law to have been on constructive notice of the recorded Citizens Deed of Trust. Ingram, as bona fide purchaser at the

---

[13] The *Hickman* court noted that "[t]he most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *In re Hickman*, 367 B.R. at 624-25 (citing *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). The court observed that "[c]ourts must 'presume that the legislature says in a statute what it means and means in a statute what it says.'" *Id.* at 625 (citing *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 803 (Tenn. 2000) (quoting *BellSouth Telecomm., Inc. v. Greer*, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)). The court found that, to give any other meaning to the phrase "of record on or after June 6, 2005" would (1) unduly restrict the intended scope of the 2005 amendment, and (2) render superfluous another sentence in subsection (f). *In re Hickman*, 367 B.R. at 625.

[14] The Cartees' brief argument concerning *Hickman* is merely that there is a dearth of Tennessee case law concerning the retroactive effect of the 2005 amendment to § 66-24-101. The Cartees recommend that this court disregard *Hickman* and certify the question to the Tennessee Supreme Court. The court does not find this necessary. The language of §§ 66-24-101(e) and (f) is clear, and the analysis of the *Hickman* court is sound.

foreclosure sale, had the right to rely upon the Citizens Deed of Trust, despite any defects in the acknowledgment. In short, the Cartees cannot attack or avoid the Citizens Deed of Trust.[15] Accordingly, Watson had the authority to (1) conduct the foreclosure sale pursuant to the Citizens Deed of Trust and (2) pass title to Ingram. On the Third Party Complaint, therefore, the court will grant summary judgment to Ingram and deny summary judgment to the Cartees.

All that remains is the distribution of the Surplus Proceeds. No party opposes Regions' position that it has a $400,000 mortgage recorded in 2004 that was junior only to the Citizens Deed of Trust. The court concurs; the evidence of record reflects that Regions is the appropriate recipient of the Surplus Proceeds. (*See* Docket Nos. 35; 40 and Exs.) The court will therefore grant Regions summary judgment on the Complaint and order distribution to it of the entire Surplus Proceeds.

## **CONCLUSION**

The court will (1) grant Ingram's Motion for Summary Judgment on the Third Party Complaint, (2) deny the Cartees' Motion for Summary Judgment on the Third Party Complaint, and (3) grant Regions' Motion for Summary Judgment on the Complaint. The Court will order that the Clerk of Court disperse the sum of $281,632.74 to Regions.

---

[15] Because this law is clear, the court need not discuss the other persuasive arguments against the Cartees' position (*e.g.*, that the Cartees have expressly waived their claims against Citizens and defenses against the Citizens Deed of Trust, that the Cartees are bound by multiple other court decisions against them, that the Cartees are the victims of their own deliberate inaction, and that the defects in the acknowledgment were technical and therefore may be overlooked where the intent was clear and there was substantial compliance).

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge